JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams Street, Suite 201
Phoenix, Arizona  85007
Telephone: (602) 382-2700

DEBORAH EULER-AJAYI
State Bar No. 010537
Asst. Federal Public Defender
Attorney for Defendant
deborah_euler-ajayi@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States Of America,<br><br>Plaintiff,<br><br>-vs-<br><br>Denys Ray Hughes,<br><br>Defendant. | No. CR-05-759-PHX-EHC<br><br>**OBJECTIONS TO PRESENTENCE REPORT AND REQUEST FOR REASONABLE SENTENCE BELOW THE NON-MANDATORY GUIDELINE RANGE** |

Denys Ray Hughes, through undersigned counsel, hereby files his objections to the presentence report and requests a downward departure as discussed below.

**I. Factual Corrections.**

A) Page 2.  Mr. Hughes has only one social security number (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), and that is the only number he has ever used.

B) Paragraph 6.  In police reports written by the two Kansas police officers, it was noted that Mr. Hughes said he was a militia/survivalist.  However, as the court heard during the suppression hearing and at trial, Mr. Hughes said only that he could be considered a survivalist.  Further, at the suppression hearing both officers testified that Mr. Hughes did not say he was or had ever been a militia member.

C) Paragraph 9. Mr. Hughes did not take empty cartridges and fill them with powder to use as little pipe bombs; rather, he used cartridges that were already filled. Similarly, he did not say that he had "components to make explosives." He said that he had materials and powders for reloading, as well as a lot of other miscellaneous equipment.

D) Paragraph 11. The presentence report incorrectly states that the food dehydrator and mortar/pestle tested positive for ricin toxin. The court and the jury heard, at trial, that those items tested positive only for castor DNA – not for ricin toxin. Only the containers holding the castor beans tested positive for ricin toxin, which reflects the fact that castor beans naturally produce and contain ricin.

## II. Applicable Guideline Section.

In Count III (ricin) Mr. Hughes was charged with attempting to manufacture ricin "for use as a weapon." "Use as a weapon" is an element of that offense. The court improperly took that essential element away from the jury during their deliberations; therefore, the verdict on Count III was improperly rendered. Accordingly, any calculations or adjustments relating to biological toxins is improperly applied and the entire Guideline computation should be recalculated solely under U.S.S.G. § 2K2.1 (dealing with firearms and other weapons).

## III. Enhancements.

The presentence report incorrectly assigns a 2-level increase for "select biological agent," under U.S.S.G. § 2M6.1(b)(1). This subsection applies under specific limited circumstances, none of which apply in this case. This case did not involve a "select biological agent." Mr. Hughes was charged with attempting to "produce" a toxin; specifically, ricin.

. . .

2

Application Note 1 provides the definitions for U.S.S.G. § 2M6.1. That Note differentiates between "select biological agent" and "toxin." It also refers to 18 U.S.C. § 178(1) for specific definitions, and that statute in turn differentiates between the two terms. Clearly, it was intended by Congress (and the Sentencing Commission implemented that intention) that these two terms are not the same and the referenced statutory sections clearly reflect that fact. Inasmuch as the Guidelines look to the statutes for definitions, probation should be bound by the same limitations and distinctions.

If the court declines to order a complete recalculation of the Guidelines, as discussed in Section II, above, then the 2-level increase for "select biological agent" should not be applied and the adjusted offense level should be 28.

**IV. Request for sentence below non-mandatory guideline range.**

Recent Ninth Circuit case law has held that the scheme of "departures" is replaced by a requirement that sentences must be "reasonable." *See* United States v. Mohamed, 2006 WL 2328722 (9th Cir. 2006). Therefore, the defense requests that the court impose a reasonable sentence below the non-mandatory guideline range for a variety of reasons.

After United States v. Booker, 543 U.S. 220 (2005), consideration of the United States Sentencing Guidelines has become just one of many factors to be weighed at sentencing. United States v. Menyweather, 447 F.3d 625, 630 (9th Cir. 2006). In deciding an appropriate sentence for this case, the Court should also consider all aspects of the Defendant's background. 18 U.S.C. § 3661. *See* Mohamed, *supra*; United States v. Plouffe, 445 F.3d 1126, 1131 (9th Cir. 2005), requiring the district court to set a "reasonable" sentence by considering both the sentencing factors of 18 U.S.C. § 3553(a), and the advisory Sentencing Guidelines.

Now that the sentencing court is no longer bound by the strictures of the Guidelines, a wide array of factors unique to the defendant may be considered. *See, e.g.,* United States v. Ranum, 353 F.Supp. 2d. 984 (E.D. Wis. 2005) ("'The guidelines' prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant'); s*ee also* 18 U.S.C. § 3661( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (cited in Booker, 125 S. Ct. at 743)). In addition, Congress has directed that the district court, in determining a just sentence, "shall impose a sentence sufficient, *but not greater than necessary*, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a).  This is the "primary directive" of the sentencing statute. *See* Ranum, 353 F.Supp. 2d at 985.

One of the first factors listed by Congress in 18 U.S.C. § 3553(a) is "the history and characteristics of the defendant." Mr. Hughes comes before this court as someone who has previously been in a courtroom just one time – nearly 30 years ago, for a DUI. Other than that one aberration, he has led a quiet and unassuming life. He served his country, held a secret clearance for working with missiles, and then spent his civilian life working a variety of different types of jobs. In more recent years, he worked as a bartender in the Phoenix area and used his summer vacations to build his retirement home in northern Wisconsin. As time allowed, he pursued a variety of hobbies and interests including photography and competitive shooting. Some of his hobbies, including sky diving, were precluded by his heart attack and bypass surgery a few years ago. Now, at just shy of 60 years old, Mr. Hughes has heart problems and

1  extensive hearing loss.  Those conditions certainly will not improve in prison, and
2  indeed they will likely have a far greater impact on him in prison since prison time
3  wears hard on even the healthiest and youngest of people.
4      Other factors listed in § 3553 relate to the nature of the offense,
5  protection of the public, and deterrence. This court heard the evidence during pretrial
6  hearings and at trial.  Once the trial hoopla is stripped away, Mr. Hughes is seen for
7  what he is – a quiet, peaceful loner who collects anything and everything.  There has
8  never been one iota of evidence that Mr. Hughes ever had even a moment's thought
9  about hurting anyone.  He has never exchanged a blow or even a cross word with
10 anyone.  He poses no threat to anyone.
11     The non-mandatory Guidelines provide a sentencing range of 97-121
12 months in prison.  Such a sentence is out of line with the facts of this case and this
13 defendant.  A *reasonable* sentence in this case would be a fraction of the Guideline
14 range.
15     Excludable delay under 18 U.S.C. §3161(h)(1)(F) and (8)(A) may occur
16 as a result of this motion or from an order based thereon.
17     Respectfully submitted:   September 11, 2006.

JON M. SANDS
Federal Public Defender


*s/Deborah Euler-Ajayi*
DEBORAH EULER-AJAYI
Assistant Federal Public Defender

5

Copy of the foregoing transmitted
by ECF this 11th day of September 2006, to:

**CLERK'S OFFICE**
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

**MICHAEL MORRISSEY**
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408

Copy delivered to:

**LISA MILLER**
United States Probation
Sandra Day O'Connor Courthouse
401 W. Washington, Suite 160
Phoenix, Arizona 85003

Copy mailed to:

**DENYS HUGHES**
Defendant

*s/G. Dorsey*
G. Dorsey